**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MIGUEL MARQUEZ-ROMERO,

Defendant-Appellant.

No. 07-1095
No. 07-1106
(D.C. Nos. 06-CR-00313-MSK &
06-CR-00501-MSK)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **TYMKOVICH** and **HOLMES**, Circuit Judges.

The appeals in Case Nos. 07-1095 and 07-1106 have been consolidated for

our review. Counsel for Defendant-Appellant Miguel Marquez-Romero has

submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and

seeks leave to withdraw. Although he has appropriately combed the record and

presented five issues for our consideration concerning Mr. Marquez-Romero's

---

[*] This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1. After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

plea and sentencing proceedings, counsel ultimately asserts that there are "no legally viable issues" to support this appeal. Aplt. Br. at 1. We agree. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm and grant counsel's request to withdraw.

## BACKGROUND

The parties are familiar with the facts, which are undisputed. Therefore, we need not detail them here. Mr. Marquez-Romero was charged in a one-count indictment with reentry of a previously deported alien in violation of 8 U.S.C. § 1326(a) and (b)(2). At the time of this offense, Mr. Marquez-Romero was on supervised release pursuant to a criminal judgment from the District of New Mexico. As a result of the illegal reentry charge, Mr. Marquez-Romero was alleged to have committed a Grade B violation of supervised release. Mr. Marquez-Romero pleaded guilty to the illegal reentry offense pursuant to a plea agreement and at sentencing admitted to the supervised release violation.

The Probation Office computed his advisory sentencing ranges using the United States Sentencing Guidelines Manual ("U.S.S.G.").[1] Regarding the reentry

_____

[1] The Probation Office used the 2006 edition of the U.S.S.G. in computing Mr. Marquez-Romero's sentence for the illegal reentry offense. *See* R. 07-1095, Vol. IV, ¶ 12 (Presentence Report, date Dec. 31, 2006). As noted, Mr. Marquez-Romero was on supervised release at the time of this offense, and the Probation Office also calculated the advisory Guidelines range of punishment for the alleged supervised release violation. Although the Supervised Release Violation Report is silent on the subject, we reasonably surmise that the Probation Office used the same 2006 edition of the U.S.S.G.—which would have been the

(continued...)

-2-

offense, it determined that the advisory imprisonment range was 77 to 96 months and the advisory range for an accompanying supervised release term was two to three years. As to the alleged supervised release violation, the Probation Office found that the advisory range was 18 to 24 months.

At sentencing, Mr. Marquez-Romero sought no departures or variances. The district court heard arguments from counsel with respect to both the illegal reentry offense and the supervised release violation and specifically noted that "it's important to recognize that the same statutory provision governs in both cases, and that is 18 U.S.C. § 3553(a)." R. 07-1106, Vol. II, Tr. at 13 (Supervised Release Violation and Sentencing Hearings, dated Mar. 1, 2007). The court sentenced Mr. Marquez-Romero to 77 months' imprisonment on the illegal reentry offense, to be followed by a supervised release term of three years. With respect to the supervised release violation, the court sentenced Mr. Marquez-Romero to 24 months' imprisonment. It ordered 18 of those months to run consecutively to the 77-month illegal reentry prison term and the remainder (i.e., six months) to run concurrently with it. Mr. Marquez-Romero timely appealed.

---

[1](...continued)
edition in effect at the time of sentencing—in making those calculations. *See* U.S.S.G. § 1B1.11 (prescribing the general principle that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced").

## DISCUSSION

Mr. Marquez-Romero's counsel has filed a brief pursuant to *Anders* and seeks leave to withdraw. *Anders* instructs that "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." 386 U.S. at 744. Mr. Marquez-Romero's counsel has appropriately complied with his obligation under *Anders* and identified issues for our review, although he ultimately concludes that they are not legally viable.

Specifically, counsel identified five issues: (1) whether Mr. Marquez-Romero voluntarily and intelligently entered into the guilty plea for the violation of 8 U.S.C. § 1326; (2) whether the 24-month sentence for a supervised release violation was reasoned and reasonable; (3) whether the 77-month sentence for violating 8 U.S.C. § 1326 was reasonable; (4) whether it was reasoned and reasonable to run a portion of the supervised release sentence consecutive to the illegal reentry sentence; and (5) whether the government breached the plea agreement concerning the illegal reentry offense by not advocating for the bottom of the advisory Guidelines range for supervised release (i.e., two years). We review these issues below and find no merit in them.[2]

---

[2]  With the possible arguable exception of Mr. Marquez-Romero's challenge to the imposition of a consecutive sentence (i.e., the fourth issue), he

(continued...)

Mr. Marquez-Romero had an opportunity to file a response to his counsel's

*Anders* brief, and he did so by requesting the appointment of new counsel.[3]

Because we ultimately conclude that there is no basis for his appeal, we deny Mr.

Marquez-Romero's request for counsel. Proceeding from the same conclusion,

we grant the motion to withdraw of Mr. Marquez-Romero's current counsel.

## A. Voluntariness of Plea

Rule 11 of the Federal Rules of Criminal Procedure is designed to assist the

district judge in making the constitutionally required determination that a

defendant's guilty plea is knowing, intelligent, and voluntary. *United States v.*

[2](...continued)
did not present the challenges lodged here to the district court. His failure to do so would not alter our standard of review in addressing some of his contentions of error, such as his challenge to the substantive reasonableness of his sentence. However, it would appear that most of his challenges would be governed by the demanding plain error standard of review. Mr. Marquez-Romero does not offer any arguments to forestall application of this standard. Under the plain error standard, Mr. Marquez-Romero would have to show: "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (internal quotation marks omitted) (quoting *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)). Because it is patent from our review of the record that the district court committed no error, and thus the outcome of this case will not turn on the standard of review, we will not definitively opine concerning the application of plain error review to Mr. Marquez-Romero's challenges, nor will we endeavor to apply that standard.

[3] Approximately seven months later, Mr. Marquez-Romero submitted a letter in which he appears to request forms to pursue an appeal and for an assigned date for a hearing on his appeal. In light of our disposition of this appeal, we deny both requests as moot.

*Gigot*, 147 F.3d 1193, 1197 (10th Cir. 1998). Whether there has been compliance with Rule 11 regarding the acceptance of a defendant's plea, and whether the plea was knowing, intelligent, and voluntary, is a question of law which is reviewed de novo. *Id.*

Mr. Marquez-Romero originally pleaded not guilty in the illegal reentry case, but he and the government subsequently entered into a plea agreement whereby Mr. Marquez-Romero agreed to plead guilty to the one-count indictment. At the Change of Plea Hearing, an interpreter was present with whom Mr. Marquez-Romero indicated he had no difficulty communicating.

Mr. Marquez-Romero responded affirmatively when the court asked, "Have you read and do you understand the charge against you in the indictment?" R. 07-1095, Vol. II, Tr. at 6 (Hearing on Change of Plea, dated Nov. 6, 2006). Mr. Marquez-Romero also acceded when the court inquired, "Do you understand that you are waiving your right to a jury trial and all the constitutional rights that go with it?" *Id.* at 19. At the end of the hearing, the court found Mr. Marquez-Romero "fully competent to enter an informed plea." *Id.* at 21. The plea was therefore accepted and Mr. Marquez-Romero was "adjudged guilty of violating 8 U.S.C. § 1326(a) and (b)(2)." *Id.* at 22. Based upon our review of the record, we conclude that there is no support for the contention that the plea was not entered into knowingly, intelligently, and voluntarily.

## B. Sentence for Supervised Release Violation

The Guidelines with respect to the imposition of sentences following supervised release revocations have always been advisory. *See United States v. Redcap*, 505 F.3d 1321, 1323 (10th Cir. 2007). We have summarized the relevant standards that guide our review:

> We will overturn a sentence imposed as a result of a violation of supervised release only if it is plainly unreasonable. A sentence imposed in excess of the recommendations in the USSG policy statements will be upheld if it can be determined from the record to have been reasoned and reasonable.
>
> Congress has directed courts to impose sentences sufficient, but not greater than necessary to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). A court must consider these factors as well as the USSG policy statements in imposing a sentence following a revocation of supervised release.

*United States v. Finney*, 251 F. App'x 583, 586 (10th Cir. 2007) (citations and internal quotation marks omitted). We find the sentence the district court imposed here to be a reasoned and reasonable application of these factors and the policy statements. Unquestionably, the sentence is not plainly unreasonable.

When the district court sentenced Mr. Marquez-Romero for the supervised release violation, the court noted, "the [Federal] Sentencing Guideline provision

governing proposed sentences for supervised release violation state[s] expressly

that they're advisory." R. 07-1106, Vol. II, Tr. at 13. The court noted that it had

"to adhere to the provisions of 18 U.S.C. § 3553(a)." *Id.* at 13-14. With respect

to § 3553(a), the district court noted:

> That statutory section tells this court that it must impose
> a sentence that is sufficient but not greater than necessary to
> accomplish a number of objectives: to reflect the seriousness
> of the offense, to promote respect for the law, to provide just
> punishment, to adequately deter criminal conduct, to protect
> the public from further crimes by the defendant, to provide the
> defendant with needed educational or vocational training,
> medical care, or correctional treatment in the most effective
> manner.
>
> Now, in order to fashion a sentence that is appropriate
> and suits those objectives, the Court is directed to consider [a]
> number of factors: the nature and circumstances of the offense,
> the history and characteristics of the defendant, the kinds of
> sentences that are available, what the Sentencing Guidelines
> would require, the need to avoid unwarranted sentence
> disparities among defendants with similar records found guilty
> of similar conduct, and the need for restitution.
>
> The presentence investigation report and the supervised
> release violation report both provide valuable information with
> regard to these factors. Where the parties do not dispute the
> factual contents, as they do not in this case, the Court treats
> the facts contained in the reports as true. The Court then
> considers how the Federal Sentencing Guidelines would apply;
> and if the Federal Sentencing Guidelines in application do not
> yield a sentence that comports with the objectives of 18 U.S.C.
> § 3553(a), the Court can fashion its own sentence in
> accordance with those objectives.

*Id.* at 14-15.

The district court then noted that the advisory Guidelines range was 18 to 24 months. The court further observed that the parties recommended the lowest sentence in that range. However, the court was troubled by Mr. Marquez-Romero's history of convictions for illegal reentry, commenting:

> Mr. Miguel Marquez Romero has a history of entering the country illegally . . . . He has been repeatedly deported. Most recently he was convicted of transporting illegal aliens . . . .
>
> For that conviction . . . he received a sentence of 24 months of imprisonment to be followed by two years of supervised release. He completed his term of imprisonment and was deported to Mexico on October 25, 2005. By July 9, 2006, he was arrested in the District of Colorado and charged with unlawful reentry of a deported alien subsequent to deportation for an aggravated felony.
>
> . . . .
>
> It does not appear to this court that the sentence of 24 months of imprisonment had a very salutary effect. It does not appear that Mr. Marquez Romero understood the gravity of his prior conduct or apparently the terms and conditions of his supervised release because he violated them within nine months of supervised release beginning. That to me does not bode well first of all for future compliance; but secondly, it does not reflect respect for the law or the sentence that was imposed in this case.

*Id.* at 16-17. Accordingly, the district court rejected the parties' recommendation, concluding that as a sanction for Mr. Marquez-Romero's violation of supervised release "a sentence of 24 months of imprisonment is appropriate." *Id.* at 17. It is

beyond peradventure that this sentence is not plainly unreasonable; to the contrary, it is clearly reasoned and reasonable.

### C. Sentence for 8 U.S.C. § 1326 Offense

The principles that guide our review may be stated succinctly:

> We review sentences for reasonableness under a deferential abuse of discretion standard. Reasonableness review has two components: procedural reasonableness and substantive reasonableness. A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence. A sentence is substantively unreasonable if its length is unreasonable in light of the sentencing factors set forth in § 3553(a).

*United States v. Zapata*, 540 F.3d 1165, 1178 (10th Cir. 2008) (citations and internal quotation marks omitted); *see United States v. A.B.*, 529 F.3d 1275, 1277-78 (10th Cir.), *cert. denied*, __ S. Ct. __, 2008 WL 4189667, at *1 (2008). A sentence within the properly calculated Guidelines range is presumptively reasonable on appeal. *See United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008); *see also Gall v. United States*, 128 S. Ct. 586, 597 (2007) (noting that "[i]f the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness").

At the sentencing hearing, the district court had before it the Probation Office's recommendation of a top-of-the-Guidelines sentence of 96 months and the parties' contrary recommendation. Mr. Marquez-Romero and the government

both advocated for a sentence at the bottom of the Guidelines range, that is, 77 months. The district court adopted the parties' view. The court stated, "I intend to impose [a] sentence at the bottom end of the guideline range, the most serious aspects of this defendant's behavior being accounted for in the offense level and in the criminal history category, so that is a sentence of incarceration of 77 months." [4] R. 07-1106, Vol. II, Tr. at 20.

The record reflects that Mr. Marquez-Romero's 77-month sentence was both procedurally and substantively reasonable. First, the Guidelines range was

---

[4] More specifically, concerning Mr. Marquez-Romero's criminal history and its implications for the appropriateness of a bottom-of-the-Guidelines sentence, the district court reasoned:

> What concerns me about this criminal history is that it's accelerating. This defendant is 27 years old. For the past eight years, he's engaged in a pattern of entering the United States illegally, being deported, and then reentering. And his most recent conviction is not simply his own reentry into the United States but a conviction for transporting others. . . . [A]fter spending two years in prison within nine months of the time that his supervised release began, he was back in the United States illegally.
>
> . . . .
>
> . . . [T]he very things that the Court is most concerned about have been taken into account in the offense level and criminal history category. And the Court does not believe that it should otherwise take into account those particular factors because they are in combination resulting in the guideline sentence.

R. 07-1106, Vol. II, Tr. at 19.

-11-

properly calculated and treated as advisory. Second, the bottom-of-the-Guidelines sentence was imposed after a thorough consideration and weighing of the factors listed in § 3553(a) and the PSR. Third, both Mr. Marquez-Romero and the government requested the 77-month sentence that was imposed, even though the Probation Office recommended a top-of-the-Guidelines sentence of 96 months. Finally, "when imposing a sentence within the properly calculated Guidelines range, a district court must provide . . . only a general statement noting the appropriate guideline range and how it was calculated." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1202 (10th Cir. 2007) (internal quotation marks omitted); *see United States v. Benally*, 541 F.3d 990, 996-97 (10th Cir. 2008). The district court's explanation for its within-Guidelines 77-month sentence clearly satisfied, and arguably exceeded, this requirement. *See A.B.*, 529 F.3d at 1289 n.18, 1290; *see also supra* note 4.

### D. Partial Consecutiveness of Sentences

At the sentencing, Mr. Marquez-Romero argued that the supervised release violation sentence should be concurrent to the sentence for the illegal reentry offense. The district court made the two sentences partially concurrent and partially consecutive. This decision by the district court was discretionary and is reviewed for an abuse of discretion. *United States v. Williams*, 46 F.3d 57, 58 (10th Cir. 1995).

On these facts, the applicable Guidelines Policy Statement provides that in a case "involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c) (2006). With respect to undischarged terms of imprisonment resulting from revocations of supervised release, the Guidelines recommend that the sentence for the criminal offense before the court be consecutive to the revocation sentence. *Id.* § 5G1.3, cmt. n.3(C). However, this recommendation is just that—a recommendation. *See* U.S.S.G. app. C, amend. 660 (2003) (noting 2003 amendment to § 5G1.3 commentary "resolves a circuit conflict" and makes clear "that imposition of sentence for the instant offense is *not required* to be consecutive to the sentence imposed upon revocation of probation, parole, or supervised release") (emphasis added). The relevant statute, 18 U.S.C. § 3584(a), states that different sentences of imprisonment generally "may run concurrently or consecutively."

Thus, a district court has discretion to run sentences concurrently or consecutively. Since the district court exercised that discretion here in a manner that actually was more generous to Mr. Marquez-Romero than the Sentencing Commission recommends, we do not see how the court abused it. Accordingly, we affirm the decision to make the sentences partially consecutive.

-13-

**E. Breach of the Plea Agreement**

Mr. Marquez-Romero contends that the government breached its plea agreement by not advocating for the bottom of the advisory Guidelines range for supervised release on his illegal reentry offense—that is, for two years. The government agreed in the plea agreement to "recommend a sentence at the bottom of the applicable guideline sentencing range." R. 07-1095, Vol. I, Doc. 19, ¶ I(a), at 1 (Plea Agreement, dated Nov. 6, 2006).

A claim that the government has breached a plea agreement is a question of law which is reviewed de novo, even when the defendant failed to object at the time of the alleged breach. *United States v. Werner*, 317 F.3d 1168, 1169 (10th Cir. 2003). The plea agreement here obligated the government to recommend a sentence at the bottom of the relevant Guidelines range. At sentencing, the prosecutor said, "Your Honor, the Government recommends, as we did in the plea agreement, the imposition of the lowest end of the guideline range for the new offense, which in this case is 77 months." R. 07-1106, Vol. II, Tr. at 10. The district court noted that the parties had not offered recommendations regarding the appropriate length of the supervised release term for the illegal reentry offense and commented, "so I am assuming they [the parties] are in agreement with the probation recommendation," which was three years. *Id.* at 18. Both Mr. Marquez-Romero's counsel and the government confirmed that they agreed on the recommended three year supervised release term. *Id.*

On these facts, we conclude that Mr. Marquez-Romero cannot establish a breach by the government of the plea agreement based on its failure to advocate for the bottom of the advisory Guidelines range for supervised release. We have held that under certain circumstances the term "sentence" in a plea agreement includes the supervised release term. *See United States v. Sandoval*, 477 F.3d 1204, 1207 (10th Cir. 2007); *see also United States v. Cooper*, 498 F.3d 1156, 1159-60 (10th Cir. 2007). However, Mr. Marquez-Romero could not have reasonably understood his agreement in that manner. *See, e.g.*, *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007) ("We thus look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea."). As Mr. Marquez-Romero's counsel pointed out:

> In this case, the supervised release guideline range was a relatively narrow range of 2-3 years, and the defendant would likely be deported following his release from incarceration. Therefore, counsel and the defendant were only nominally concerned about the supervised release term. Under these facts, the supervised release term was not contemplated by the parties when the plea agreement was reached.

Aplt. Br. at 19.

Furthermore, even if the term "sentence" could be construed in this case to embrace the supervised release term, we would conclude that by affirmatively endorsing at sentencing the three year term recommended by the Probation Office, Mr. Marquez-Romero waived any objection to the government's purported

-15-

breach.  *Cf. United States v. Carrasco-Salazar*, 494 F.3d 1270, 1273 (10th Cir. 2007) ("Mr. Carrasco waived his objection to the 16-level enhancement by indicating to the district court that it had been resolved."); *United States v. Martinez-Jimenez*, 294 F.3d 921, 922-23 (7th Cir. 2002) (determining that defendant's statement through counsel that he did not object to the adjusted offense level adopted by the district court constituted an abandonment of his prior argument regarding whether his prior conviction qualified as a crime of violence); *see also United States v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004) (noting that a stipulation "by its very nature signals the intentional relinquishment of any and all rights to challenge the admissibility of the stipulated evidence, [and] is a clear example of waiver if anything is").  Accordingly, we discern no merit in Mr. Marquez-Romero's contention that the government breached the plea agreement.

## CONCLUSION

Because none of the issues presented by Mr. Marquez-Romero have merit, we **AFFIRM** in Case Nos. 07-1095 and 07-1106.  We also **GRANT** the motion to withdraw of Mr. Marquez-Romero's counsel.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

-16-